My name is Mark Vega, and I represent the appellants in this matter, who are all defendants in the underlying case below. The role of doing justice for those who suffer unfairly is a noble and worthwhile calling. That sentiment was true 30 years ago, Judge Reinhart, when you first uttered it, probably never thinking it would be repeated back to you 30 years later, as you were commenting on the ebb and flow of our access to the federal courts. Rather than creating and refining technical rules designed to prevent the courts from hearing cases, you have often and frequently expressed a concern for efficiency in the operations of this branch of the government, and federal courts in particular. This case is not about federal question jurisdiction. These are not the indigent and huddled masses. These are not those members of groups who have been historically prejudiced by not having easy access to the courts. Now, you can get access to the federal courts through diversity jurisdiction, when every party is from a different location. Essentially, the Constitution allows us to gather in one place, the federal courthouse, to resolve our disputes. Kagan. Yes, Your Honor. On appeal, you raised a whole host of challenges to the district court's jurisdiction that you never bothered to raise in the district court. And I understand that jurisdiction is an issue that can't be waived, but I'm just trying to figure out what happened here, because I don't think it means that you're supposed to wait until you appeal and then, you know, bring on all of these jurisdiction issues. So what's your explanation for that? Thank you, Your Honor. I did not bring them, and I don't know if Your Honors can see the boxes behind the counsel table, but surprisingly, this case is not post-judgment. We're not close to judgment. We're not in post-trial motions. We haven't received a verdict. There has been no trial. There has been no discovery. There has been no pre-trial dispositive motions. There has been no discovery in this case. The case is not even at issue, Your Honor. And yet, plaintiffs have brought two nearly identical cases, arguing them in federal court, separating them because in an effort to maintain jurisdiction. I received this matter in September of 2011. This was shortly after Luce Forward, a defendant in the lower case, had filed its motion to compel arbitration and motions to dismiss. Once I was in the matter in September 2011, I attended the first hearing at the district court in October, Your Honors. And that's leading to an answer to your question. Yes, Your Honor. Why don't we get to the answer then? Apologies, Your Honor. We are under deadlines in the federal system that require certain motions to be undertaken with a under a certain deadline. There are two identical cases, and I currently represent many of the defendant appellants. And so their rights, in order to protect them, it was required of me to bring the motions that were required at the time. Now, subject matter jurisdiction is something that can be brought up, as you indicated, Your Honor, at any step in the process. But we are, despite being in the Ninth Circuit Court of Appeals, Your Honor, this case is barely started. I brought the subject matter jurisdiction issues to a head in these two. There are four cases consolidated before this morning's current hearing. I still haven't heard an answer to my question, but let me ask you maybe a more pointed question, and maybe that will help. What evidence do you have to back up your assertion that the only member of KCX is summit trading? The articles on file with the Delaware Secretary of State, Your Honor, and the declarations of at least two of the appellant defendants, those are the answer to that specific question. What are the articles? I'm sorry. The articles what? The corporate documents on file at the Delaware Secretary of State's office. And declarations filed by Chuck Arnold and the departed Mr. Pixeris. Well, why did you never dispute KCX's membership in the district court? I'm trying to figure that out. Can you explain that to me? Well, KCX is in the State court system. There are a number of KCX cases that are in the State court system. I do not represent that defendant in those State court actions. But it is properly in the State court. That's where all of these claims should be, Your Honors. There are three parties. Why didn't you argue that issue before Judge Feist? The issues that we argued before, that I've argued before Judge Feist, had to do with our motion to compel arbitration. I know that. I know that. My question is why did you wait until the eve of appeal or on appeal to dispute KCX's membership with respect to jurisdiction and summit trading? I'm just trying to figure out the timing here. Very well, Your Honor. A series of motions were filed in June and July of 2012. Judge Feist did not deliver a decision on those motions until January of 2013. So, Your Honor, we knew that we were filing the motions required under the Federal rules of procedure and the local rules. We filed those motions when and as they were required. But we were waiting to understand what Judge Freeh's decision would be in the various pending motions, rather than bring up a new motion or add new elements to motions that he had already taken under consideration. The moment that subject matter jurisdiction became very real for me and for my office was as the motions to compel arbitration were denied, and as Judge Freeh's expressed his reasoning for denial of those motions and other motions, it was clear that the at that moment, when we were the moment that we were going to appeal those decisions, is the moment that I needed to bring this subject matter jurisdiction argument to the Court. I think stressing again, Your Honors, that while time has elapsed, the case itself has not moved forward. Defendants would like nothing more than each of these parties, the dispensable parties as well, to be in State court. You waited until Judge Feist made a decision on the motion to dismiss before bringing up this whole issue of summit trading? Did you file a motion for reconsideration? Your Honor, we had hopes that the motion for the motion to compel arbitration would be successful and that the motion to dismiss would be successful. It still doesn't explain why you waited, but let's talk about the arbitration. I'm trying to figure out if you can explain to me or if you have an explanation for waiting nearly a year into this litigation before claiming a right to compel arbitration based on the reported releases that Mr. Kolker signed in April 2011. Yes, Your Honor. While a year has passed, seven months of that time is taken up by the district court analyzing the issues before him and issuing his decision. And the loose forward motion to compel arbitration was still pending. So there were reasons that there was no reason to bring up additional grounds for the court to make its ruling on the loose forward motion. Your strategy is a piecemeal strategy? You wait to see what the judge decides and then you come up with a different reason? I've never seen anything quite like this. Your Honor, that's not the strategy at all. All right. Then help me understand it, because the strategy was the prior counsel at the district court that was prior counsel for my clients was working closely with loose forward counsel and documents were filed, motions were filed, and we were looking forward to Judge Preece's decision. The moment that I had my hands on the releases that were executed essentially by a number of the defendants and some non-parties, they were stacked up and ready to go to support our motion. And we received, once we received the issue, we received rulings from Judge Preece that were contrary to what we had hoped, and we then assembled our own, I assembled a motion to compel arbitration on behalf of my then clients, including, to include these releases once the court indicated that its opinion that the engagement letter and the arbitration clause in that engagement letter did not apply and could not be applied to other defendants. And, again, the timing of waiting, Your Honor, is a little bit different. None of us like really to wait, but the case is not at issue. Their case is not at issue. This has not progressed forward, and today, this morning, I'm asking that this tribunal get rid of this case in Federal court and allow and invite every single party and every necessary party, including parties to contracts that were allegedly part of a giant scheme to make money for my clients and rape and pillage the nominal defendant, and send all of those parties to a more appropriate venue and allow them to seek relief there. Well, it looks like you desperately took every measure possible to accomplish that. Give me your best argument why you should be successful here on appeal. You have a number of issues here, commotion to compel, standing, jurisdiction, the anti-SLAPP motion, and then the McDermott motion to dismiss. I will give you one, Your Honor. Give me your best one here. There is no subject kind of jurisdiction of this Court. Summit is a bohemian company, as is Comopi and Kamsen. Well, Omnicom is a Delaware corporation. KCX also, because it is owned by Summit Holdings, is also deemed to be a Delaware corporation and a company from the Bahamas for purposes of assessing jurisdiction. Each of these companies are parties to, excuse me, Your Honors, the plaintiffs also identified a number of apparent recipients of shares of stock that were issued to them by my clients as part of this giant scheme. They've named them by name in their complaint, but they don't appear anywhere either. Each of those parties would have an opinion as to whether or not the contracts they entered into were valid, whether they received proper consideration for them, whether and how they should be interpreted and whether and how they should be enforced. We are merely asking that this Court rule that the Federal system has no subject matter jurisdiction because of lack of diversity, and urge the plaintiffs to seek relief in a more appropriate venue, including the State court and, ideally, arbitration through the judicial arbitration and mediation service. Judge Noonan. Will you specify exactly what corporation you say that destroys diversity? Yes, Judge Noonan. Summit... What's that? Summit Trading Limited is a Bahamas company. It is the sole stakeholder of KCX American Aerospace, which is a Delaware LLC. Summit was initially named in one of the causes of action in the first complaint. The record in this matter includes references to Summit Trading and, importantly, Judge Noonan, Omnicom. Omnicom is a third party who is apparently a recipient of a settlement in a litigation context with the nominal defendant, a settlement that was approved by a court. And while Omnicom and Summit and KCX appear in the record of this matter hundreds of times, because these examples are where the alleged fraud and mastermind conspiracy took place, they are identified as parties to contracts and negotiations that are at the heart of plaintiffs' claims, and yet they are nowhere to be found in the pleadings. We argue they belong in the pleadings and should be in State court. The second amended complaint is the nominal complaint with Summit named as defendant. With Summit named as the defendant in the second amended complaint. No, Your Honor. Sorry, I could not hear you, Your Honor. No, no, no. It was not. All right. That's the end of it. Very well. If there's more questions, I can entertain them now or preserve what time I might have left. Four minutes for... Thank you, Your Honor. Thank you, Your Honor. I have a question for you. Fascinated by the name of your author, it's called Insight. Is that correct? Yes, Judge Newnan. Thank you very much, sir. It is indeed Insight with a C. With a C. What does Insight mean? It means to stir. It means to cause awareness. It means to motivate into action. And ultimately, it means to take action. Do you know of any other law that goes with your balance? No. The only other Insight law is actually was an affirmative action program started by a number of African-American and women legal counselors who focused on domestic abuse. But that's the only other finding that I've seen where Insight spelled that way is put to good use.  Counsel. May it please the Court. My name is Michael Hefter, and I represent the Comofi and CAM HCN, which I'll call the CAM funds for the purposes of this oral argument, if that's okay, Your Honors. You're appearing in both cases. The first thing I wanted to do, Your Honor, was to see if we can deal with a housekeeping matter. Picking up on your comment about the time today and that we may get cut short, my counsel over here, Ms. Rickert, is from the Wolf Holdenstein firm. She represents the plaintiff class shareholders who brought an action in the district court, and I represent the creditors of the company who brought a creditor derivative action against the defendants. And those two cases have proceeded in parallel in the district court, where both cases were brought up on appeal by the appellants, and as a matter of judicial economy, Ms. Rickert and I separated the argument in some way for the benefit of the court. I was going to deal with the – yeah, I think I'm answering your question, Your Honor, if that's okay. I was going to deal with the jurisdictional issues and the arbitration issues to the extent there are any questions about those. And Ms. Rickert was going to deal with the anti-SLAPP issues, and I – so that's what we were intending to do. I hope that's okay with the court, but I'll be guided by what the court – I think what we probably ought to do is just have you deal with what you're going to deal with, and we'll reserve the anti-SLAPP question and see if your opponent wants to discuss that for a few minutes, and then we'll – if so, then we'll have an answer to that. Otherwise, I think we can dispose of the issues in both cases in this one argument. I think that would save a lot of time, Your Honor. Yes, okay. I agree with it. Something good will come out of this. Something. So I wanted to start off by answering Judge Murga's question about why the defendant did not raise the subject matter jurisdiction issue originally. If you recall from the record, after these complaints were filed, one of the first things that Judge Feist did was issue an order to show cause to my clients and the plaintiffs, the shareholder class plaintiffs, to determine whether there was subject matter jurisdiction. What Judge Feist, in his order to show cause, asked us to show cause for as to why there was diversity of jurisdiction. The reason for that is that my clients are corporate entities that are incorporated in the Cayman Islands, and loose forward, one of the defendants in the case is a law firm partnership. And what I believe Judge Feist was trying to – the answer that Judge Feist was trying to get at is because it's a law firm partnership, all members of the law firm are considered for diversity purposes, and there was no evidence in the record that we pled that the camp funds were corporate entities. So at that point in time, we submitted evidence that the camp funds were corporations and that they should be treated as foreign aliens incorporated under the laws of the Cayman Islands. And I believe loose forward confirmed that none of its partners at the time were foreign entities. So Judge Feist at that point in time was satisfied that there was federal diversity jurisdiction based on that, and he issued an order vacating the order to show cause, and we proceeded to litigate the case. At that point in time, KCX was a defendant in the case. We alleged in the original complaint that KCX was a Delaware limited liability company and that its members were two Florida residents, Mr. Fixaris and Mr. Arnold, both of whom are defendants. Under the law, a limited liability company for diversity purposes, you look at the members of those entities. At that point in time, no one on the defendant's side argued that there was a lack of diversity jurisdiction because Summit was a member of the Delaware limited liability company. And Mr. Vega's statement that he's relying on the Delaware Secretary of State's certificate, there's nothing in the certificate that indicates that Summit was a member of KCX at the time. It wasn't until months, if not years later, that all of a sudden on appeal, Mr. Vega, on behalf of his clients, made the argument that there's a lack of diversity jurisdiction. He contends, I think what he's arguing today, that, well, he didn't get into the case until a later point in time. Well, the fact of the matter is, is that Mr. Vega was substituted as counsel in this case on October 4th, 2011. That was 13 days prior to the original date for oral argument on Loose Forward's original motion to compel arbitration, which was denied. At no point at that point in time did KCX's prior counsel or any of the defendants raise an argument that there was a lack of diversity jurisdiction because Summit was a member of the Delaware LLC. So in our view, this Court's decisions in Schnabel, and I'm going to get the name wrong, but Judge Reinhardt, you were on the panel, I believe, or I think you wrote the opinion, in Ceja Prado, both compel the conclusion that the district court's determination at that point in time was not clearly erroneous that there was diversity jurisdiction. And the fact that defendants, appellates, are now raising the question should be a closed book. Well, how is that? If jurisdiction's never waived, how do we close the book on that? Well, that goes to the intersection between Schnabel and your decisions in Schnabel, Your Honor, and Ceja Prado. In Schnabel, the case proceeded, and on appeal, the defendant argued that there was a lack of subject matter jurisdiction because the district court erred in making a factual determination as to whether one of the parties was non-diverse. And the Court at that point in time rejected that argument, saying that factual determination was not clearly erroneous. At a minimum, in our view, well, let me back up for a second, because Judge Feist himself made a ruling that there was insufficient evidence to suggest that Summit Trading was the sole member of KCX at the time that the complaint was filed. If there is a question at this point in time as to whether Summit Trading was the sole member at that point in time, and the only evidence in the record that suggests that it is, is the self-serving statements of defendant's principles, who are the defendants in this action, then at a minimum, I would say Schnabel compels the conclusion that we're done with that issue. But at a minimum, because Judge Feist made that determination, that at a minimum, Sager Prado would suggest that the matter should be remanded to the district court for factual determination as to what was the true state of affairs as of that point in time. Because, as Your Honor pointed out, they waited for so long that it strains credulity that Summit was in fact a member of KCX at that point in time. All reasonable inferences should be drawn against them based on the fact that they had every single opportunity, motion after motion that they filed. They filed a motion for a bond, a motion to compel arbitration. They sought the district court's power and authority. And yet, at no point in time until they filed these appeals did all of a sudden they raise this issue. So whether they say and put in affidavits from Mr. Arnold and Mr. Fixeris that in fact Summit was the sole member of KCX should not be given credibility. It's not credible because those arguments, whether Mr. Vega or any other lawyer was their counsel at the time, should have raised that. The fact that they didn't suggests completely that that fact itself was gerrymandered for the purposes of destroying diversity. And all we need to look at, Your Honor, is after Judge Feist issued his first decision denying the motion to compel, the defendants sought to add a member to KCX called Bias Avoidance Corporation, which was a New York corporation. And under their theory, now that a New York corporation was on the plaintiff's side, that somehow destroyed diversity. That's a clear example. And the use of Bias Avoidance Corporation can only be concluded to reflect their view of the perception that Judge Feist was somehow being biased by keeping this case and not sending it to arbitration. So we already have evidence that they attempted to change the members or the shareholders of KCX for the purpose of destroying jurisdiction. Why should we believe then that Summit was in fact a member of KCX as of that point in time when they never raised that issue? The Delaware filings do not show that at all. And they presented no evidence that Summit was a member of KCX as of that point in time. And what evidence supports the allegation in your complaint that the only members of KCX are Mr. Fixus and Mr. Arnold? The evidence that we relied on was federal public securities filings where Mr. Arnold and Mr. Fixeris are labeled as the people who are controlling KCX. So, you know, Mr. Vega makes this statement that this case has gone on for a long time. He repeated that. Well, it's been three years since legitimate plaintiffs with every right to access the federal courts who have adequately pled diversity jurisdiction have been waiting for discovery to start and this case to proceed. And it's only because of successive, multiple, and I would argue frivolous motion practice, motion practice that was determined by the district court judge in this case, Judge Fease, led him to scratch his head, let me put it mildly. And he indicated that he had never seen such successive motion practice like this. Your Honor raised the issue, why did you wait one year to file motions to compel arbitration based on these releases that were purportedly signed by District Corker? Well, according to the defendants, those alleged releases were purportedly executed by the parties on April 29th, 2011, weeks before we filed our complaint. And yet the only party to move to compel arbitration was Luce Fuller. So, again, if they legitimate, if those existed at the time, which we highly dispute, if they existed at the time, the fact that they waited for a year suggests, one, that they're playing games, two, suggests they never existed in the first place. They never what? They never existed in the first place. And, three, even if they existed, put inside their failure to make a motion on them, which, by the way, filing successive motions. Mr. Corker, a known associate of Mr. Arnold, had absolutely no authority to enter into those agreements on behalf of the company. So the notion that we've been waiting and waiting is a direct result of improper motion practice in this Court. And Ms. Rickard could talk about the anti-SLAPP, but the anti-SLAPP, in our view, was directly related to a direct effort to take advantage of the stay imposed by California law. Mr. Vega makes also a number of different statements. He says, Omnicom is a Delaware corporation. Omnicom is not a Delaware corporation. It's a New York corporation with its principal place of business in New York, as alleged in their sham California litigation. On the issue, I would brief fully, Your Honor, the issue that even if Casey X was a foreign alien under this Court's decision and the Supreme This Court, appellate courts, have the power to remove non-diverse, indispensable parties. We would suggest that under that case law, while we don't think Casey X is non-diverse, even if you were to find that they were, there is a clear mechanism under the rules to remove them because neither Casey X nor Summit nor Omnicom are necessary and indispensable parties here, Your Honor. You cannot, the Supreme Court has said over and over again, that joint tortfeasors are not necessary and indispensable parties. And by the way, neither of those entities, Summit or Omnicom, have expressed an interest in this litigation. Mr. Arnold is the principal of Summit. Mr. Suleiman is the principal of Omnicom. Not once have they sought to intervene in this action to claim that their rights are somehow impeded or impaired. They have not done that. And in any event, their interests are more than adequately represented by the current defendants. So under this Court's precedent and the Supreme Court precedent under Rule 19, we don't believe that they are necessary or indispensable parties. Unless Your Honors have any further questions of me, I will give up my time to Ms. Rickard. Well, do you want to argue any thought, or do you want to wait and see whether your opponent does? Well, I have prepared, as though it were two separate bills. I mean, the second file, you're going to have to look at the second one. All right. Thank you. Thank you. If Your Honor, I've made just one more point, just so I can stress the point. I know we didn't really talk about the arbitration point, but I do want to make one significant point, which is that Judge Feast's application of the Supreme Court's precedent involved fully consistent with this Court's decision in Wolsey and Sardaglia. Thank you. Thank you. Thank you, Your Honors. Just a few minutes, a few issues to specifically bring up. I did misspeak. Omnicom is a New York entity, not a Delaware entity. In July of 2011, when plaintiffs were asked by Judge Feast to demonstrate that there was subject matter jurisdiction, as counsel admitted, only moves forward, was really involved in that conversation. I came in the case a couple of months later, and at the other the defendants who I represent, essentially were going through a phase where it was you're trying to figure out why they were named, because all they knew is they were businessmen and they were part of this organization. And when they got in, due to other mismanagement and malfeasance that occurred from some employees that had embezzled funds that my clients discovered when they stepped into the company, those defendants, the other appellants and defendants, my clients, weren't, had no sense that they were going to be forced to retain counsel or really get involved in this matter, because Lewis Ford was adequately represented and was pushing forward its agenda at the time, including for the October 2011 hearing and the rulings that we've got months after that. So my emphasis on this case has been around a while, but the case itself is, and it's practically a newborn. It's not an issue. The defendants haven't answered. We are at the very beginning stages, and now is exactly the time to assess whether or not there's a party that is an indispensable party. The reason no one from Summit or Omnicom, I'm assuming, or I can safely assume, I think, the reason they haven't come in to say, oh, someone's trampling my rights, is because right now there's just a bunch of plaintiffs who haven't, who don't have a case that's moved forward that's an issue that's where all the parties have been served, and it's going to trial. So if I was advising Summit or Omnicom, I wouldn't tell them to step in and say anything. I would let them, let the plaintiffs figure out what their case has to be. And I'm arguing today that it needs to involve everyone, and the only way to appropriately do that is to get it into state court. And as far as the membership of KCX and Summit, and any issue, any questions about, if I heard that there's a four-letter word that begins with S, that two different ones, that the plaintiffs continue to use to characterize the various transactions that my clients have been involved in with full board approval and not the board approval, not approval of the board of directors that are the defendants, but existing board members approved all these transactions. Kagan. I don't understand your argument. What did you just say right now? I don't get it. What did you just say? There's a word that begins with S? Yes. Sorry, Your Honor. I'm loathe to continue to repeat it into the record. Sham and scam transactions are in the record, are written many times, and plaintiffs continue to articulate them, though they are merely alleged to be this. All the evidence that exists in the file, in the record, including that submitted by my office and my clients, indicates that all these transactions, we had the full approval of the board of directors and not just the defendant directors, but others who were operating the company at the time. Yes, it was going, it was, it had suffered tremendously, but these actions and transactions were approved. We're asking that the defendants, who are necessary parties, be brought into the mix. We agree that the Newman Green v. Alfonso Lorraine case is an important one for the court to study. In that case, the judges said, the court held that you should move slowly, and we're asking that the court use deliberate speed, but make sure that the plaintiffs add every defendant who is necessary and who must be in these proceedings, so that it cannot only defend itself, but provide an answer to plaintiffs' various allegations.  Thank you. Thank you. Are you anxious to talk about slot? I don't think it's necessary. I don't think it's necessary. All right. Thank you. The case just argued will be submitted.
judges: REINHARDT, NOONAN, MURGUIA